J-A02021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: X.R. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 715 WDA 2021 |

Appeal from the Decree Entered June 1, 2021
In the Court of Common Pleas of Fayette County
Orphans' Court at 20 ADOPT 2021

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: JANUARY 28, 2022**

A.W. (Mother) appeals from the decree terminating her parental rights to her son, X.R. (Child), born October 2019.[1]  In addition, Mother's counsel has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After review, we grant the petition to withdraw and affirm the decree.

Fayette County Children and Youth Services (CYS) became involved with Mother and Child after receiving a report on November 6, 2019, shortly after Child's birth, alleging that Child was living with a family friend and appeared malnourished, underweight, and with dry skin on his face.  N.T., 5/27/21, at 12.  CYS investigated and confirmed Child was living with the family friend

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Child's father, J.R., relinquished his parental rights voluntarily and has not appealed.

while Mother was homeless. *Id.* at 13. Mother had been in CYS's care for two years "due to mental health concerns and parent/child conflict" before reaching adulthood, and CYS had concerns about Mother's mental health. *Id.*

CYS received a second report on January 4, 2020, alleging that Mother had stated she was "going to kill" Child, and was hearing the voice of Child's father, who was telling her to kill Child. *Id.* at 13-14. CYS staff and police went to the home where Mother was staying, and Mother was subsequently committed for inpatient mental health treatment. *Id.* at 14. Shortly thereafter, on January 13, 2020, the juvenile court adjudicated Child dependent. Child has been in the same foster placement since January 15, 2020. *Id.* at 12-14.

Following the dependency adjudication, CYS prepared a family service plan (FSP) comprised of objectives for Mother to facilitate reunification. *Id.* at 14-15. Mother was to maintain a relationship with Child, but failed to do so. CYS arranged supervised, in-person visits beginning in January 2020, but Mother last visited Child in-person in February 2020. *Id.* at 19. Overall, Mother attended five of 47 scheduled in-person visits. *Id.* at 20. Mother was also afforded 30 virtual visits (from March - May 2020 due to the COVID-19 pandemic), but only participated in 11. *Id.* at 20. Mother's last contact with Child occurred during a virtual visit in April 2020. *Id.*

Mother also failed to obtain a drug and alcohol evaluation or attend parenting classes. *Id.* at 18. She additionally failed to maintain stable housing. *Id.* at 19. Mother moved from place to place and was sometimes

homeless. *Id.* From May to July 2020, Mother was incarcerated on burglary and criminal trespass charges.[2] *Id.* at 16, 30-31.

Finally, although Mother generally complied with her mental health objective by obtaining an evaluation and treatment, CYS continued to be concerned with Mother's mental health. *Id.* at 15-17. Mother did not receive treatment while incarcerated and missed most of her appointments in March 2021. *Id.* at 16. Mother persisted in believing that her deceased ex-fiancé, E.H., was still alive and contacting her. *Id.* at 17, 38-40, 45-47, 56-57.

On January 29, 2021, CYS filed a petition to terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court conducted a hearing on May 27, 2021, during which it heard testimony from CYS caseworker, Alexandria Paull; Mother; and Mother's friend, P.D.[3] At the conclusion of the hearing, the court dictated a decree on the record terminating Mother's rights. The court entered its decree on June 1, 2021. Mother timely filed a notice of appeal on June 22, 2021, along with a concise statement of errors complained of on appeal. Mother's counsel filed a petition to withdraw and *Anders* brief in this Court on September 27, 2021.

We begin by addressing the petition to withdraw and *Anders* brief. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When

---

[2] Resolution of the charges is not clear from the record, although Mother testified she would be on house arrest until May 2022, and would thereafter serve a year of probation. N.T., 5/27/21, at 41-42.

[3] Child was approximately 19 months old at the time of the hearing and was represented by a guardian *ad litem* (GAL).

faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)); **see also In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending the **Anders** procedure to appeals from involuntary termination decrees).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). Counsel must also provide this Court with a copy of the letter advising the appellant of his or her rights. **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Finally, the Pennsylvania Supreme Court has directed that **Anders** briefs must:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

- 4 -

Here, Counsel avers in his petition to withdraw that he has determined Mother's appeal is frivolous after conducting a thorough and conscientious examination of the record. Counsel also avers that he mailed Mother a letter explaining her rights, and has attached a copy of the letter to his **Anders** brief. Counsel's letter complies with our law, as it informs Mother that she may retain new counsel or proceed *pro se* and raise any additional arguments she deems worthy of our attention. Importantly, the letter indicates Counsel provided Mother with a copy of the petition to withdraw and **Anders** brief, and Mother appears on the certificates of service on both filings. Counsel's **Anders** brief includes a summary of the facts and procedural history of this case, an issue that could arguably support Mother's appeal, and Counsel's assessment of why that issue is frivolous, with citations to the record and relevant legal authority. As Counsel has complied with **Anders**, we review the issue presented in his brief. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief identifies the following issue: "Did the [orphans'] court abuse its discretion in terminating the parental rights of the natural mother, [Mother], as [CYS] failed to present sufficient evidence to sustain its burden of proof?" **Anders** Brief at 3 (unnecessary capitalization omitted).

- 5 -

Our standard of review in termination of parental rights appeals requires us to accept the findings of fact and credibility determinations of the orphans' court if they are supported by the record. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citing *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). If the record supports the court's findings, we must determine whether the court committed an error of law or abused its discretion. *Id.* An abuse of discretion does not occur merely because the record could support a different result. *Id.* (citing *In re Adoption of S.P.*, 47 A.3d at 827). We find an abuse of discretion "'only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.'" *Id.* (quoting *In re Adoption of S.P.*, 47 A.3d at 826).

Pennsylvania's Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2101-2938. It requires a bifurcated analysis, in which the orphans' court focuses initially on the parent's conduct pursuant to Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing *In re R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006)). If the court finds the party seeking termination has established grounds pursuant to Section 2511(a), it must then turn its attention to Section 2511(b), which focuses on the child's needs and welfare. *Id.* A critical element of Section 2511(b) is the discernment of whether the child has a bond with his or her parent, and what effect severing that bond may have on the child. *Id.* (citing *In re R.J.S.*, 901 A.2d at 508; *In re C.P.*, 901 A.2d 516, 520 (Pa. Super.

2006)). The party seeking termination bears the burden of proof under both Section 2511(a) and (b) by clear and convincing evidence. ***In re C.P.***, 901 A.2d at 520 (citing ***In re B.L.L.,*** 787 A.2d 1007 (Pa. Super. 2001)).

Instantly, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Thus, we analyze the court's decision pursuant to Section 2511(a)(1) and (b), which provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To satisfy the requirements of Section 2511(a)(1), the party requesting termination must prove conduct by the parent "sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re R.J.S.*, 901 A.2d at 510). If the party does so, the orphans' court must consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* (quoting *Matter of Adoption of Charles E.D.M.*, *II*, 708 A.2d 88, 92 (Pa. 1998)). This Court has emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of a child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citations omitted).

In this case, the orphans' court determined that Mother failed to perform parental duties. Orphans' Court Opinion, 8/26/21, at 7-8. The court observed that Mother had not seen Child in over a year, and found no merit to Mother's explanations for her failure to see Child, which included a lack of transportation and having "other things to do[.]" *Id.* at 4-6. The court also found that Mother did not comply with her FSP objectives. *Id.* at 7. The court explained that Mother's mental health treatment had been sporadic or stopped completely at times, and Mother failed to obtain a drug and alcohol evaluation, attend parenting classes, or maintain stable housing. *Id.* Though Mother had been living with her friend, P.D., for approximately three months, the court noted Mother's history of moving from place to place. *Id.*

The record supports the orphans' court's findings. As summarized above, CYS filed its termination petition on January 29, 2021, such that the six-month period for purposes of Section 2511(a)(1) began on July 29, 2020. Mother's last contact with Child, which Mother conceded, occurred in April 2020. N.T., 5/27/21, at 20, 30, 43. Accordingly, Mother refused or failed to perform parental duties during the statutory six months, and it was incumbent on the orphans' court to consider Mother's explanation for doing so. *In re Z.S.W.*, 946 A.2d at 730.

Mother initially blamed her failure to visit Child on lack of transportation. N.T., 5/27/21, at 25, 30-31. However, the CYS caseworker, Alexandria Paull, contradicted this explanation, and testified that CYS had arranged

transportation for Mother. *Id.* at 20-21. Mother subsequently admitted that CYS had arranged for someone to pick her up and bring her to visits, although she also claimed she still lacked transportation, and testified the person in whose home she was staying was "running from warrants" and would not allow anyone else to come to the home. *Id.* at 32, 43-44.

Mother's explanation for her lack of contact with Child shifted during her testimony. She cited other factors as reasons for her lack of contact with Child, including incarceration, losing her phone, "having problems," and the abusive conduct of her ex-fiancé, E.H. *Id.* at 30-31, 49-50. Mother also testified about "poisoning" from a medication she had taken, and claimed the visitation provider told her she could no longer have visits. *Id.* at 26-27, 39-40, 49-50. To the contrary, Ms. Paull testified that the visitation provider did not limit visits, "with the exception of when Covid hit, but then after that [Mother] was able to have visits with her child." *Id.* at 50. Ms. Paull testified that she discussed with Mother the importance of Mother seeing Child and establishing a bond, but Mother replied she had "a lot of stuff going on." *Id.* at 21.

Consistent with the above evidence, the orphans' court acted within its discretion in concluding Mother had failed to provide a sufficient explanation for her lack of contact with Child. Further, the record supports the court's finding that Mother failed to comply with her FSP goals, as she did not obtain a drug and alcohol evaluation, attend parenting classes, or maintain stable

housing. *Id.* at 18-19. Accordingly, we discern no error of law or abuse or discern by the court in finding that Mother failed to perform her parental duties under Section 2511(a)(1).

We next examine termination of Mother's rights pursuant to Section 2511(b). As noted above, Section 2511(b) focuses on a child's needs and welfare, including consideration any bond the child may have with the parent, and the effect of severing that bond. *L.M.*, 923 A.2d at 511. The court must determine whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa. Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (quoting *In re E.M.*, 620 A.2d 481, 484–85 (Pa. 1993)). The existence of a bond, while significant, is only one of many factors courts should consider when addressing Section 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.,* 33 A.3d 95, 103 (Pa. Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

In this case, Child is very young, having been born in October 2019, and adjudicated dependent in January 13, 2020. N.T., 5/27/21, at 12. He began living in his current foster home as an infant on January 15, 2020. *Id.* Thereafter, Child had little contact with Mother, and accordingly, the orphans' court concluded that Child did not have a bond with Mother. Orphans' Court

Opinion, 8/26/21, at 6-7. On the other hand, the court found Child was bonded with his pre-adoptive foster family. *Id.* at 7. At the time of the termination hearing on May 27, 2021, Child was a year and seven months old, and had lived one year and four months with his foster family.[4] These circumstances, and the record overall, support the finding that Child did not have a bond with Mother. *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) ("a child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time.").

Finally, we note the orphans' court's express concern regarding Mother's ongoing mental health issues with respect to Child's needs and welfare, and in particular, Child's safety. For example, Mother testified adamantly that her deceased ex-fiancé, E.H., was still alive. *Id.* at 38-40, 45-47. Mother maintained E.H. contacted her "continuously," and even called her "the day before yesterday," during which "he said he was going to send the Hell's Angels here to burn the house down and kill me." *Id.* at 38. Following this testimony, CYS recalled Ms. Paull for rebuttal. Ms. Paull testified that CYS had consulted official records while Mother was testifying, and confirmed E.H. had died five months earlier. *Id.* at 56-57.

---

[4] Ms. Paull agreed that Child's foster family would be "open to adopt" him if the orphans' court terminated Mother's parental rights. N.T., 5/27/21, at 22.

In sum, we discern no error or abuse of discretion by the orphans' court. Our independent review confirms Mother is not entitled to relief, and the record does not reveal any non-frivolous issues overlooked by Mother's counsel. We therefore grant counsel's petition to withdraw and affirm the decree terminating Mother's parental rights.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2022